## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| AMERICA SCIENCE TEAM RICHMOND, INC., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:22-CV-451 |
| | ) | |
| ENOCH CHAN, | ) | |
| **SERVE:**  4110 Bowne Street | ) | |
|               Apt. 6S | ) | |
|               Flushing, New York  11355, | ) | |
| | ) | |
| *Defendant*. | ) | |

## COMPLAINT

Plaintiff, America Science Team Richmond, Inc. ("**AmeriSci Richmond**," **AmeriSci**" or "**Plaintiff**"), a Virginia corporation, by counsel, states as follows for its Complaint against Defendant, Enoch Chan ("**Chan**" or "**Defendant**").

## INTRODUCTION

1.      AmeriSci is an analytical environmental testing lab that provides a comprehensive range of services, including testing services for mold, bacteria, asbestos, and lead.

2.      AmeriSci, through various affiliates, also operates in Boston, Los Angeles, and New York.

3.      Each AmeriSci employee receives and agrees to abide by AmeriSci's Employee Handbook (the "**Handbook**" or "**Policies**"), which details AmeriSci's employment policies, such as the non-disclosure of business information, the use of AmeriSci's computers, e-mail, and software, employee conduct, and prohibited conduct, among other policies.

4.      Chan, as an AmeriSci employee, agreed to abide by AmeriSci's Policies.  Not only did Chan fail to abide by AmeriSci's Policies, but Chan misappropriated AmeriSci's data for his personal benefit, causing AmeriSci to sustain exceptional damages.

5.      As a result of Chan's unauthorized and unlawful actions, AmeriSci seeks monetary and other relief for Chan's breach of contract, breach of fiduciary duty of loyalty, conversion, and his unauthorized access to AmeriSci's computer and servers and misappropriation of its trade secrets in violation of the Virginia Uniform Trade Secrets Act, Va. Code §§ 59.1-336, *et seq.*, Virginia Computer Crimes Act, Va. Code §§ 18.2-152.1, *et seq.*,  Computer Fraud and Abuse Act, 18 U.S.C. § 1030, Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, and the Stored Communications Act, 18 U.S.C. § 2701.

## THE PARTIES

6.      AmeriSci is a Virginia corporation organized and existing under the laws of the Commonwealth of Virginia with its principal place of business located at 13635 Genito Road, Midlothian, Virginia 23112.

7.      Upon information and belief, Chan is a Canadian citizen who has lived in the United States since at least 2015.  Chan was authorized to work in the United States, and for AmeriSci, pursuant to a work permit, which expired on August 21, 2020.  Upon information and belief, Chan's last known address is 9169 W. State Street, Garden City, ID 83714-1733.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under one or more laws of the United States, including 18 U.S.C. § 1030, 18 U.S.C. § 1836, and 18 U.S.C. § 2701.

9.      This Court has jurisdiction over AmeriSci's state law claims, pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367, because the state law claims are so related to the federal claims that they form part of the same case or controversy.

10.     Alternatively, this Court has jurisdiction over this action, pursuant to 28 U.S.C. § 1332, because Plaintiff and Defendant are citizens and residents of different states and the amount in controversy exceeds the jurisdictional prerequisite of $75,000.00, exclusive of interest and costs.

11.     Defendant worked at AmeriSci in this district; and, as a result, the events giving rise to the asserted claims occurred in this judicial district.  29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391.  Venue is, therefore, proper in this district.

12.     This Court has personal jurisdiction over the Defendant because a substantial portion of the events giving rise to the claims stated herein occurred in Richmond, Virginia.

## FACTUAL BACKGROUND

### *AmeriSci's Business*

13.     AmeriSci provides analytical testing of mold, bacteria, lead, and asbestos for environmental professionals across the country.  As the only private environmental laboratory supporting the Federal Emergency Management Agency ("**FEMA**") at Ground Zero on September 11, 2001, and subsequent clean-up at the Pentagon, AmeriSci has unique experience in crisis management.  AmeriSci was also a first-tier responder for the Centers for Disease Control and Prevention ("**CDC**") during the anthrax attacks in 2001 and was enlisted as a member of the CDC's Laboratory Response Network ("**LRN**") – a network of laboratories whose capabilities include response to biological and chemical threats against the Unites States and other public health emergencies.

3

14.     AmeriSci has a team of experienced, trained and certified geologists, geochemists, mineralogists, chemists, biologists, microbiologists, environmental scientists, and other support team members providing specialized analysis to AmeriSci's governmental and commercial customers.  In 2002, AmeriSci's senior staff was invited by the Environmental Protection Agency ("**EPA**") to participate as a panelist in helping to establish new environmental standards and protocols.  AmeriSci's CEO also testified before Congress during the Import Safety Crisis in 2007 sharing his expertise in imported food and consumer product safety.  AmeriSci's CEO was also invited to participate in the President's Work Group for Import Safety in 2007.   His recommendations were adopted in three (3) different sections of the final report to President George W. Bush.

15.     In conducting its business, AmeriSci maintains customer pricing, compensation data, computer processes, computer programs and codes, customer lists, customer preferences, financial information, marketing strategies, production processes, scientific data, technological data, human resources documents, training materials, and other confidential and proprietary business information and trade secrets, (collectively, the "**Trade Secrets**").

16.     AmeriSci, with more than thirty (30) years of experience in environmental analytic testing, has invested considerable time, capital, and resources in developing and maintaining the confidentiality and propriety of its Trade Secrets.  AmeriSci's proprietary protocols were designed over an eight- (8) year period with countless hours invested in frequent upgrades and improvements over the next twelve (12) years.  No less than four (4) different areas of expertise were utilized in developing seventy-thousand (70,000) plus computer files to become a mutually supporting modular system.  Each area includes the foremost experts in the country.  It is a uniquely designed system that is not available in any commercial market.

17.     AmeriSci's Trade Secrets are critical for its success as they enable AmeriSci to compete with other laboratories, as well as maintain a marketing advantage.

18.     AmeriSci undertakes to maintain the secrecy of its Trade Secrets.  AmeriSci's Trade Secrets are restricted to employees and are only maintained on AmeriSci's Servers ("**Servers**"), which are protected by security software.  Each employee who has access to AmeriSci's Trade Secrets is subject to AmeriSci's Policies and agreements.

19.     The Trade Secrets represent substantial value to AmeriSci because they are not generally known by, and not readily ascertainable by proper means by, other persons who can, or seek to, obtain independent economic value from the disclosure or use of the Trade Secrets.

### *AmeriSci's Computer Systems and Policies*

20.     AmeriSci utilizes a virtual machine to conduct AmeriSci business. A virtual machine is an emulation of a computer system that allows a user to utilize the data and power of a centralized server via an application window on the user's desktop ("**Virtual Machine**").  The software allows a user to access all of their data through a secure system using any computer.

21.     The Virtual Machine is connected to AmeriSci's Servers.

22.     AmeriSci requires its employees to sign a Confidentiality, Non-Solicitation, and Non-Competition Agreement (the "**Agreement**") requiring employees to, among other things, not disclose, communicate or divulge any confidential information of AmeriSci.

23.     Per the Agreement, confidential information means all information not generally known by the public or is treated as proprietary by AmeriSci, such as AmeriSci's methods, systems, designs and know-how, business plans, marketing methods and plans, financial information and other information that, if disclosed, would be reasonably likely to provide a competitive advantage to a competitor; its Trade Secrets.  The Agreement also requires all

employees, including Chan, to, upon termination, immediately return to AmeriSci all of AmeriSci's property, including, without limitation, all confidential information in his possession.

24.     In addition to the Agreement, Chan, as an employee of AmeriSci, agreed to abide by AmeriSci's Policies.

25.     Section 5.04 of AmeriSci's Policies provides "[c]omputers, computer files, the e-mail system, and software furnished to employees are [AmeriSci's] property intended for business use.  Employees should not use a password, access a file, or retrieve any stored communication without authorization."

26.     AmeriSci's Policies also provide that "Employee installed software must be approved by the Network Manager before being installed."

27.     Section 6.03 of AmeriSci's Policies states "[t]he following are examples of infractions of rules of conduct . . . [t]heft or inappropriate removal or possession of property . . . [u]nauthorized use of telephones, mail system, or other employer-owned equipment . . . [and] [u]nauthorized disclosure of business 'secrets' or confidential information."

28.     Lastly, Section 7.04 of AmeriSci's Policies prohibits the "[v]iolation of any safety, health, security, or [AmeriSci] or client policies, rules, or procedures."  The policy also prohibits "[c]ommitting a fraudulent act or a breach of trust."

### *AmeriSci's Employment of Chan*

29.     On November 15, 2016, America Science Team New York, Inc. ("**AmeriSci New York**") hired Chan as an entry-level Polarized Light Microscopy ("**PLM**") analyst following Chan obtaining his certificate of training for PLM analysis on or around January 22, 2016.

30.     From November 15, 2016, through early June 2019, Chan worked for AmeriSci New York at its offices located at 117 East 30th Street, New York, New York 10016.

6

31.     On or around June 4, 2019, Chan was transferred to AmeriSci Richmond to continue working as a PLM analyst, as well as to receive immigration sponsorship from AmeriSci to obtain Permanent Resident status.

32.     Upon Chan's transfer to AmeriSci Richmond, Chan executed the Agreement, whereby Chan agreed to not disclose, communicate, or divulge any confidential information belonging to AmeriSci.

33.     In addition to Chan maintaining the confidentiality of AmeriSci's confidential information, the Agreement also provides Chan is prohibited for twenty-four (24) months from soliciting clients, providing services to AmeriSci clients, or inducing AmeriSci employees to terminate their relationship with AmeriSci.

34.     Lastly, the Agreement prevents Chan from competing against AmeriSci for a period of twelve (12) months within a city, county, or locality in which Chan worked for AmeriSci during the twelve- (12) month period immediately preceding Chan's termination date.

35.     Chan's first day working for AmeriSci Richmond was September 25, 2019.

36.     Chan's last day working for AmeriSci Richmond was November 23, 2019, although Chan's employment with AmeriSci was not officially terminated until August 21, 2020.

37.     In total, Chan worked a total of 27 days in Richmond, or 324 hours; 284 hours of which were supervised and 40 unsupervised.

### *AmeriSci's Discovery of Chan's Misappropriation*

38.     On January 1, 2020, AmeriSci conducted routine computer maintenance on its systems.  During the maintenance, AmeriSci's System Administrator discovered approximately 70,000 files, or 20 gigabytes of data, was transferred from AmeriSci's Common Share folder to Chan's Virtual Machine (the "**Transfer**").

39.     The unauthorized Transfer occurred on November 14, 2019, at or around 4:10 p.m., when Defendant copied the Common Share folder in his department.  The Defendant subsequently went on family medical leave five (5) days after the theft.

40.     Chan accomplished the Transfer of data out of the building without detection through the download and installation of an unauthorized Virtual Private Network ("**VPN**") on Chan's Virtual Machine.  VPNs are commonly used to transfer large quantities of data without detection. The unauthorized VPN was downloaded and installed at or around 7:13 p.m. on November 14, 2019, when Chan was working alone and unsupervised in AmeriSci's PLM laboratory.

41.     No AmeriSci employee, and specifically AmeriSci's Systems Administrator, Supervise, or Systems Technical Assistant, authorized or approved the Transfer, or the installation of the VPN, to Chan's Virtual Machine.

42.     Chan violated AmeriSci's Policies through the unauthorized Transfer and unauthorized installation of the VPN on his Virtual Machine.

43.     AmeriSci's discovery revealed the Transfer consisted of data unrelated to Chan's assigned job duties as a PLM analyst, and included human resources documents, marketing materials, purchase orders, and standard operating procedure documents for unrelated companies. The data included hundreds of files consisting of proprietary protocols for other departments and companies outside of PLM including Transmission Electron Microscopy ("**TEM**"), Phase Contrast Microscopy ("**PCM**"), and Microbiology.  Chan transferred over seventy-thousand (70,000) files when, in fact, he only needed one (1) to perform his job duty.  All of the information copied consisted of AmeriSci's confidential and proprietary Trade Secrets, and such information

could be used by Chan or a competitor to have a turnkey approach to opening a new, competing laboratory providing the same or similar services as AmeriSci with little effort.

44.     Upon information and belief, Chan is using or intends to use the Trade Secrets in violation of the Agreement.

45.     On August 21, 2020, AmeriSci terminated Defendant's employment following the expiration of Defendant's legal authorization to work in the United States and the various violations of AmeriSci's Policies and misappropriation of AmeriSci's Trade Secrets, resulting in the instant litigation.  Chan was granted emergency medical leave and never returned to work. Chan effectively abandoned his job.  He lied about his whereabouts stating that he was in Hong Kong and was unable to return to the United States due to COVID-19 restrictions when, in fact, he was already in the U.S. after or around March 18, 2020.

## COUNT I
(Breach of Contract)

46.     AmeriSci incorporates by reference and realleges each and every allegation contained in the foregoing paragraphs, as though fully set forth herein.

47.     The Agreement is a legally enforceable agreement between AmeriSci and Chan.

48.     Chan owed a contractual duty to AmeriSci to maintain confidentiality of AmeriSci's confidential information, among other duties.

49.     AmeriSci performed its obligations under the Agreement.

50.     Chan breached the terms of the Agreement with AmeriSci by misappropriating Confidential Information after his employment with AmeriSci ended.

51.     As a result of Chan's breach, AmeriSci has suffered and will continue to suffer damages in an amount to be determined by the evidence at trial, but not less than $500,000.00, exclusive of interest and costs.

## COUNT II
### (Breach of Fiduciary Duty)

52.     AmeriSci incorporates by reference and realleges each and every allegation contained in the foregoing paragraphs, as though fully set forth herein.

53.     Under common law, Chan owes AmeriSci a fiduciary duty of loyalty during the course of his employment.

54.     Chan breached his duty through the misappropriation of AmeriSci's Trade Secrets and confidential information.

55.     As a result of Chan's breach, AmeriSci has suffered and will continue to suffer damages in amount to be determined by the evidence at trial, but not less than $500,000.00.

## COUNT III
### (Misappropriation of Trade Secrets)

56.     AmeriSci incorporates by reference and realleges each and every allegation contained in the foregoing paragraphs, as though fully set forth herein.

57.     Certain confidential information, previously described, constituted valuable Trade Secrets of AmeriSci both at common law and as defined by Virginia's Uniform Trade Secrets Act, Va. Code §§ 59.1-336 – 59.1-343.

58.     Chan wrongfully used and continues to wrongfully use AmeriSci's Trade Secrets in violation of Virginia's Uniform Trade Secrets Act.

59.     Chan misappropriated and continues to misappropriate AmeriSci's Trade Secrets by improper means in violation of AmeriSci's rights at common law and under Virginia's Uniform Trade Secrets Act.

60.     As a result of Chan's misappropriation of Trade Secrets by improper means, AmeriSci is entitled, under the Virginia Uniform Trade Secrets Act, to damages representing its

compensatory damages, Chan's profits, and any other unjust enrichment not covered by AmeriSci's compensatory damages and Chan's profits.

61.     Chan willfully and maliciously misappropriated AmeriSci's Trade Secrets entitling AmeriSci to punitive damages, attorneys' fees, costs and prejudgment interest pursuant to Virginia's Uniform Trade Secrets Act.

**COUNT IV**
(Conversion)

62.     AmeriSci incorporates by reference and realleges each and every allegation contained in the foregoing paragraphs, as though fully set forth herein.

63.     Conversion is the unauthorized assumption and exercise of the right of ownership of goods belonging to another to the exclusion of the owner's rights.  A conversion takes place when someone intentionally interferes or exercises control over property of another, interfering with that person's right or interest in the property.

64.     AmeriSci's confidential information is the exclusive property of AmeriSci.

65.     Despite demand, AmeriSci has been unable to access or recover its confidential information being used by Chan.

66.     Chan has wrongfully exercised dominion and control and assumed authority over AmeriSci's exclusive property, thereby depriving AmeriSci of its property and rights thereto.

67.     Chan's wrongful assumption of authority over AmeriSci's exclusive property has damaged AmeriSci in an amount to be determined by the evidence at trial, but not less than $500,000.00.

68.     Additionally, as a result of Chan's wrongful conversion of AmeriSci's property, AmeriSci is entitled to punitive damages pursuant to Va. Code § 8.01-38.1.

## COUNT V

(Violation of Virginia Computer Crimes Act – Va. Code §18.2-152.1, *et seq*.)

69.     AmeriSci incorporates by reference and realleges each and every allegation contained in the foregoing paragraphs, as though fully set forth herein.

70.     As a PLM analyst at AmeriSci, Chan was provided access to a Virtual Machine, wherein he needed to utilize one file to perform his job duties.  Chan had no authority to use AmeriSci's computers, computer systems, or devices, including, but not limited to, any computer programs or software, for purposes not authorized by AmeriSci.

71.     The Virginia Computer Crimes Act prohibits, among other things, any person "without authority" to use a computer or computer network to "make  . . . an unauthorized copy . . . of computer data."  Va. Code §18.2-152.4.

72.     Chan willfully and maliciously used AmeriSci's computers, computer programs, and devices to make unauthorized copies of AmeriSci's confidential information and Trade Secrets, including AmeriSci's human resources documents, marketing materials, and purchase orders, among other documents.

73.     Upon information and belief, Chan's Transfer was for the purpose of unfairly competing with AmeriSci.

74.     Chan had no authority, express or inherent, to make copies of AmeriSci's confidential and proprietary information for any purpose other than pursuing AmeriSci's legitimate business purposes, for which Chan needed but a few documents to utilize.

75.     As a direct and proximate cause of Chan's unauthorized actions, AmeriSci has sustained damages in an amount to be determined by the evidence at trial, but not less than $500,000.00.

76.     Under Va. Code §18.2-152.12, AmeriSci is entitled to recover damages.

## COUNT VI
### (Violation of Computer Fraud and Abuse Act – 18 U.S.C. § 1030)

77.     AmeriSci incorporates by reference and realleges each and every allegation contained in the foregoing paragraphs, as though fully set forth herein.

78.     Defendant, intentionally and without authorization, exceeded his authorized access when he accessed the common share data.

79.     Defendant, knowingly and with the intent to defraud, accessed a protected computer without authorization, and by means of such conduct furthered his intended fraud and obtained information of value, namely the confidential information and Trade Secrets, and such information exceeds $500,000.00.

80.     Defendant, intentionally and without authorization, exceeded his authorized access, and, as a result of such conduct, caused damage to AmeriSci.

81.     As a result of Defendant's actions as described in this Complaint, AmeriSci is entitled to have and recover damages from Chan in an amount to be proven at trial and to include economic and compensatory damages, including, but not limited to, all attorneys' fees, costs, and losses.

## COUNT VII
### (Violation of Defend Trade Secrets Act of 2016 – 18 U.S.C. § 1836)

82.     AmeriSci incorporates by reference and realleges each and every allegation contained in the foregoing paragraphs, as though fully set forth herein.

83.     As an employee of AmeriSci, Chan learned about, was exposed to, and had access to AmeriSci's Trade Secrets.  AmeriSci's Trade Secrets are a valuable commercial asset to AmeriSci's success.

84.     AmeriSci's Trade Secrets derive independent actual commercial value from not being generally known or readily ascertainable through independent development or reverse

13

engineering by persons who can obtain economic value from its disclosure or use.  The value of such information is evidenced in part by AmeriSci's commercial success as a leader in analytical testing for, among other things, asbestos, lead, mold, and water.

85.     AmeriSci took reasonable measures to protect the secrecy and value of its Trade Secrets, including having employees, including Chan, sign confidentiality agreements, restricting confidential information to those with a need to know such information through the use of a Virtual Machine, and ensuring that the information was protected from unauthorized uses.

86.     Defendant knew of the existence of the Trade Secrets and, by virtue of his position with AmeriSci, took unauthorized steps to obtain AmeriSci's Trade Secrets.

87.     Defendant has wrongfully misappropriated such Trade Secrets by accessing AmeriSci's systems without authorization and through improper means and retaining a copy of all the information contained in the common share drive.  Consequently, Chan has violated the Defend Trade Secrets Act of 2016.

88.     Defendant's actions have proximately caused, and will continue to cause, actual damage to AmeriSci, including financial loss and irreparable harm.

89.     Defendant's actions were willful and malicious.

90.     As a result of Defendant's actions described herein, AmeriSci is entitled to have and recover damages from Defendant, including damages for the actual losses incurred by AmeriSci and damages for any unjust enrichment gained by Defendant as a result of the misappropriation.

91.     AmeriSci is also entitled to have and recover punitive damages and its attorneys' fees and costs as a result of Defendant's willful and malicious misappropriation.

**COUNT VIII**
(Unlawful Access to Stored Communications – 18 U.S.C. § 2701)

92.     AmeriSci incorporates by reference and realleges each and every allegation contained in the foregoing paragraphs, as though fully set forth herein.

93.     Defendant, without authorization, intentionally accessed a facility through which an electronic communication service is provided.  During the course of his wrongful conduct, Defendant obtained electronic communications while they were in electronic storage.  In obtaining the electronic communications, Defendant acted willfully and maliciously.

94.     AmeriSci has been damaged by Defendant's actions, and AmeriSci is entitled to have and recover from Defendant all losses incurred, including, but not limited to, all attorneys' fees, costs, and losses resulting from this action.

**COUNT IX**
(Trespass to Chattels)

95.     AmeriSci incorporates by reference and realleges each and every allegation contained in the foregoing paragraphs, as though fully set forth herein.

96.     Defendant intentionally used, meddled with, and accessed AmeriSci's computer, servers, and Trade Secrets without authorization.

97.     As a result of Defendant's trespass, AmeriSci has been damaged.

WHEREFORE, AmeriSci prays for the following relief:

1.     That AmeriSci have and recover all damages resulting from Defendant's actions, in an amount to be proven at trial, but at least $500,000.00, and that such damages include all amounts by which Defendant has been unjustly enriched;

2.     That AmeriSci have and recover punitive damages from the Defendant by virtue of his malicious and willful actions, pursuant to the Defend Trade Secrets Act of 2016 and the Virginia Trade Secrets Act;

3.      That the Court enter a preliminary and permanent injunction requiring Defendant to refrain from any further use of the confidential information and Trade Secrets, that Defendant return all confidential information, Trade Secrets and AmeriSci property in his possession, and that Defendant certify through a forensic examination of his computers and other devices that he has returned such information and that he has not retained any copy or copies of any of AmeriSci's information;

4.      That AmeriSci have and recover its costs in this action, to include its attorneys' fees; and

5.      That the Court enter such other and further relief as it deems proper and just.

## JURY DEMAND

America Science Team Richmond, Inc. demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: June 22, 2022                           Respectfully submitted,

 

       /s/ Stephen M. Faraci, Sr.
Stephen M. Faraci, Sr., Esquire (VSB #42748)
Robert N. Drewry, Esquire (VSB #91282)
WHITEFORD, TAYLOR & PRESTON, L.L.P.
1021 E. Cary Street, Suite 1700
Richmond, Virginia 23219
Telephone:     (804) 977-3307
Facsimile:      (804) 977-3298
E-Mail:          sfaraci@wtplaw.com
E-Mail:          rdrewry@wtplaw.com

*Counsel for Plaintiff, American Science Team Richmond, Inc.*