IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

AMERICA SCIENCE TEAM
RICHMOND, INC.,
               Plaintiff,

v.                                            Civil Action No. 3:22cv451

ENOCH CHAN,
               Defendant.

## OPINION

This matter comes before the Court on motions filed by the defendant, Enoch Chan, to set aside default judgment and for leave to supplement that filing. (ECF. Nos. 27, 31.) The plaintiff, America Science Team Richmond, Inc. ("AmeriSci"), purportedly served Chan in this trade secrets action in October 2022. Chan failed to timely answer, which ultimately led the Court to enter default judgment against him. Chan now moves to set aside the Court's entry of default judgment, claiming that he never received service of process and did not learn of AmeriSci's action against him until nearly a year after the Court entered default judgment. Because Chan has presented sufficient evidence indicating that he did not receive personal service of the summons and complaint in October 2022, the Court will grant Chan's motions.

## I. BACKGROUND

### A. Facts as Alleged in the Complaint

Chan started working for an AmeriSci affiliate in 2016 and transferred to the company's laboratory in Richmond, Virginia, in September 2019. On November 14, 2019, Chan took advantage of a rare period in which he was unsupervised to install an unauthorized virtual private network ("VPN") on his work computer. He then used the VPN to copy and transfer AmeriSci's

trade secrets off-site. Five days later, Chan went on family medical leave and never returned to work. AmeriSci discovered Chan's misappropriation in January 2020.

### B. Procedural History

#### 1. *Preceding Action*

On July 7, 2021, AmeriSci sued Chan for breach of contract; breach of fiduciary duty; misappropriation of trade secrets; conversion; violation of the Virginia Computer Crimes Act, Va. Code § 182.-152.1, *et seq.*; violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836; unlawful access to stored communications, 18 U.S.C. § 2701; and trespass to chattels. *See* Complaint, *Am. Sci. Team Richmond, Inc. v. Chan*, No. 3:21-cv-00437-HEH (E.D. Va. July 7, 2021), ECF No. 1. After AmeriSci failed to effectuate service on Chan in the matter,[1] the Honorable Henry E. Hudson dismissed AmeriSci's complaint without prejudice on February 14, 2022.

#### 2. *Instant Action*

##### a. *Service of Process*

On June 22, 2022, AmeriSci again sued Chan, bringing a complaint nearly identical to the one it filed in the earlier action before Judge Hudson. After experiencing more difficulty locating Chan, AmeriSci purportedly issued personal service on Chan at his parents' home in Scarborough, Canada on October 4, 2022. The process server attests that he went to Chan's parents' home on that date under the belief that Chan lived there. (ECF No. 29-1 ¶ 4.) Upon arriving, the process

---

[1] The parties dispute why AmeriSci failed to effectuate service in the original action. AmeriSci contends that Chan actively avoided service and refused to authorize his then-attorney in a different matter, Stewart Andrew Sutton, to accept service. (*See* ECF No. 29, at 4.) Chan disputes that he actively avoided service, (ECF No. 30, at 3–4), and points to a letter from December 1, 2021, in which Sutton informed AmeriSci's counsel that he lacked "authority to accept service on [Chan's] behalf," (ECF No. 29-3, at 3).

server noticed and took a picture of a white Kia belonging to Chan in the driveway. (*Id.* ¶ 5; ECF No. 29-2 ¶ 5.) He then knocked on the front door, and an older Asian man answered. (ECF No. 29-1 ¶ 6.) The process server asked to speak with Chan. (*Id.* ¶ 7.) The older man closed the door and returned with a second Asian man who identified himself as Enoch Chan. (*Id.* ¶ 8.) The process server left a copy of the summons and complaint with the individual who identified himself as Enoch Chan. (*Id.* ¶ 9.)

Chan's father, David Chan, provides a different account of that day's events. David agrees that his son's Kia was in the driveway on October 4, 2022, but only because Chan "left it behind in Canada when he moved to Hong Kong." (ECF No. 30-1 ¶ 8.) David further asserts that when the process server came to his home, he answered the door and told him that Chan was not there. (*Id.* ¶ 5.) David then shut the door. (*Id.*) When David opened the door later, he "discovered that some papers were left near the door." (*Id.*) David disputes that his son or any other Asian man was in the home that day. (*Id.* ¶ 13.)

### b. Entry of Default and Default Judgment

After Chan failed to respond to the complaint, AmeriSci moved for entry of default, which the Clerk entered against Chan on November 22, 2022. Several months later, AmeriSci filed a motion for default judgment with a *Roseboro* notice. Chan again did not respond, nor did he appear for the hearing that the Court scheduled on AmeriSci's motion on April 4, 2023. The Court accordingly granted AmeriSci's motion and entered default judgment against Chan that same day.[2]

---

[2] The Court ordered Chan to pay $255,500 in compensatory damages and $50,000 in punitive damages—plus post-judgment interest on both of those sums—and $29,739.40 in attorneys' fees and costs. (ECF No. 24, at 1.) The Court also permanently enjoined Chan from further using AmeriSci's trade secrets and confidential information and directed Chan to immediately return all of AmeriSci's confidential information in his possession. (*Id.* at 2.)

### c. *Motions and Supporting Documents*

On February 15, 2024, Christopher Hoge—Chan's attorney in a separate matter—learned of the default judgment entered against Chan in this action.[3] (ECF No. 28-2 ¶ 3.) Hoge alerted Chan to his discovery five days later "by way of a phone call to his father, David Chan." (*Id.* ¶ 5.) Chan then moved to set aside the Court's entry of default judgment on March 11, 2024. In the motion, Chan claims that he left the United States on March 4, 2022; temporarily lived with his parents in Canada for about five months; and then moved to Hong Kong for medical school on August 15, 2022. He maintains that AmeriSci never served him on October 4, 2022, and that he lacked notice of this suit. In support, Chan includes (1) an affidavit stating that he first learned of the default judgment against him through Hoge in February 2024 and (2) a receipt for a plane ticket in his name from Toronto to Hong Kong on August 15, 2022. (*See* ECF No. 28-1.)

Thereafter, Chan submitted a motion for leave to supplement his prior filing with additional documentary evidence as to his whereabouts on October 4, 2022. This included a travel history report that he obtained from the Canada Border Services Agency ("CBSA") showing that he left Canada on August 15, 2022, and did not return to the country at any time through at least March 28, 2024. (*See* ECF No. 32-1, at 2.) Chan also submitted a ledger of transactions on his Octopus Card, which "is a rechargeable contactless card that can be used to pay both for transport in Hong Kong and for many shops and restaurants," *Octopus Card*, Civitatis Hong Kong,

---

[3] Hoge replaced Sutton as Chan's counsel in his dispute against his former immigration attorney, Elaine Chang, in Maryland state court. (*See* ECF No. 28-2 ¶ 2; ECF No. 29-3, at 44–45.) Hoge also represents Chan's parents in that same dispute. The Chans allege that Chang worked for AmeriSci and extorted them out of $114,000 for legal immigration services. AmeriSci's counsel maintains that Chang did not work directly for AmeriSci, but did provide legal immigration services for AmeriSci employees.

https://www.introducinghongkong.com/octopus-card (last visited Mar. 6, 2025). The ledger shows two transactions as having occurred on October 4, 2022. (*See* ECF 21-1, at 10.)

### d. Motions Hearing

The Court conducted a hearing on Chan's motions on December 12, 2024. Both Chan and his father testified. Chan maintained that he did not take any confidential information or install a private VPN on any AmeriSci computer. He also stated that he left Canada on August 15, 2022, and has not returned since. To support his testimony, Chan introduced pictures that he took during his travels to Hong Kong on August 15, 2022; the CBSA travel history report showing that he left Canada on August 15, 2022, and did not return thereafter; and the Octopus Card ledger showing his transactions in Hong Kong on October 4, 2022. The Court admitted these documents into evidence over AmeriSci's objection as to their authenticity.

On cross-examination, defense counsel questioned Chan about whether he continues to use the email address "enoch.chan@hotmail.com," the personal email address he used when he worked at AmeriSci. Chan insisted that he had not used the email address for years. AmeriSci then introduced a copy of an email with the email address "jwec@hotmail.com," which the Court admitted into evidence. Chan explained that he shares this new email address with his parents, but that he rarely checks the account himself. AmeriSci next asked Chan whether he ever gave his Octopus Card to someone else to use, which Chan denied. Finally, AmeriSci introduced the complaint from Chan's Maryland case against Chang. The complaint lists 18 Farmington Crescent in Ontario, Canada—the address of Chan's parents' home—as Chan's address. When asked why the Maryland complaint lists his home address as in Canada rather than in Hong Kong, Chan stated that he never told Hoge to use that as his address. He then theorized that his father must have told Hoge to use that address simply to ensure that all important documents in the case were sent there.

5

David took the stand next. Like Chan, David testified that Chan had not been in Canada since August 15, 2022. When asked why the Maryland complaint lists 18 Farmington Crescent as Chan's address, David explained that Chan is merely a student in Hong Kong, so his permanent legal address remains in Canada. Questioning then turned to what occurred on October 4, 2022. David maintained that he told the process server that Chan was not home that day and that he found the documents at his door the following day. David did not open the package, however, because it was not addressed to him. He also failed to tell Chan that he had received the package until learning of the default judgment against Chan in February 2024. When asked why he sat on this information for around 16 months, David explained that he did not want to burden his son with yet another legal matter and disrupt his studies.

At the end of the hearing, the Court withheld ruling on Chan's motion to set aside default judgment. The Court directed Chan to submit additional evidence regarding his whereabouts on October 4, 2022, including documentation from his medical school detailing his dates of enrollment and his academic schedule on the date in question. The Court also instructed Chan to produce additional evidence showing that he has a meritorious defense, including an expert affidavit explaining why Chan could not have committed the conduct alleged in the complaint.

### e. Post-Hearing Submissions

As instructed, Chan submitted additional evidence to the Court on February 3, 2025. Chan filed three documents to demonstrate that he was in Hong Kong on October 4, 2022. First, he submitted a certificate of enrollment from the University of Hong Kong showing that he was admitted to medical school on September 1, 2022. (*See* ECF No. 38, at 22.) Second, he submitted

his class schedule for the week of October 3–7, 2022.[4] (*See id.* at 23.)  Third, Chan included a copy of texts between himself and his mother on October 4, 2022. (*See id.* at 24.)  According to Chan, these texts show that he went grocery shopping for her on that date, as corroborated by the transactions contained in the previously submitted Octopus Card ledger.

Chan also submitted two pieces of evidence to demonstrate that he has a meritorious defense.  First, he shared a copy of what he attests was AmeriSci's work schedule on November 14, 2019. (*See id.* at 10.)  The schedule shows that at least one other AmeriSci employee was scheduled to work with him in the laboratory during all times of his shift that day.  He, therefore, disputes that AmeriSci left him unsupervised that day.  Second, Chan provided an affidavit from Patrick Eller, a digital forensics expert.  Eller states that Chan would not have been able to install a private VPN unless AmeriSci granted Chan network administrator access or Chan circumvented the controls. (*See id.* at 14.)  According to Eller, "there is no indication that Mr. Chan possesses the skill level required" to circumvent the controls. (*Id.*)  Moreover, the alleged transfer would have taken hours to accomplish given the size of the files. (*See id.*)  Thus, assuming Chan was supervised that day—as the schedule reflects—AmeriSci should have noticed any efforts by Chan to misappropriate AmeriSci's confidential information. (*See id.*)

## II. <u>DISCUSSION</u>

Chan moves to set aside the Clerk's entry of default and the Court's final entry of default judgment on the ground that he did not receive proper service in this case.  He also moves to supplement his motion with additional evidence of his whereabouts on October 4, 2022.  The Court will address the latter motion first, as resolution of Chan's motion to set aside default judgment

---

[4] Chan created and maintained this schedule himself, as his medical school does not keep attendance records.  He nevertheless attests that it "is a true and accurate copy of [his] academic calendar" for that week. (ECF No. 38, at 20.)

depends in part on whether the Court considers the evidence Chan submitted with his motion to supplement the record.

### A.  *Motion for Leave to Supplement*

"On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d).  Motions for leave to supplement "should be freely granted, and should be denied only where 'good reason exists . . . , such as prejudice to the defendants." *Franks v. Ross*, 313 F.3d 184, 198 n.15 (4th Cir. 2002) (quoting *Walker v. United Parcel Serv.*, 240 F.3d 1268, 1278 (10th Cir. 2001)).

Chan seeks leave for the Court to consider two additional documents that evince his whereabouts on October 4, 2022: (1) a travel history report from the CBSA detailing his travels in and out of Canada from January 2022 through March 2024, and (2) a ledger of his Octopus Card transactions in Hong Kong from April 2022 through April 2023.  AmeriSci opposes the admission of these documents on authenticity, hearsay, and relevance grounds.[5]

---

[5] In opposing Chan's motion for leave to supplement, AmeriSci argues for the first time that, even if its process server did not personally serve Chan, the company at least effectuated proper alternative service because "the Summons and Complaint were served at Chan's residence address in [Scarborough,] Canada and accepted by Chan's father." (ECF No. 33, at 1.)  A party may serve another in a foreign country "by any agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f)(1).  "[I]f an international agreement allows but does not specify other means," a party may also serve another in accordance with the foreign country's laws. Fed. R. Civ. P. 4(f)(2).  Article 10 of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents allows for alternative service through the mail, but not by leaving a copy of the summons and complaint at one's home.  And while the laws of Scarborough, Canada permit alternative service by leaving the summons and complaint at one's home with some other adult who lives there, *see* R.R.O. 1990, Reg. 194, r. 16.01(1), r. 16.03(5)(a), the process server must also mail copies of these documents to the person at their residence the same day or the following day, *see id. see* R.R.O. 1990, Reg. 194, r. 16.03(5)(b).  AmeriSci has not provided any evidence that its process server complied with this mailing requirement and, thus, that it effectuated valid alternative service on Chan pursuant to Ontarian law. *See id.*

### 1. *Authentication*

AmeriSci first contends that Chan failed to properly authenticate the travel history report and Octopus Card ledger. AmeriSci effectively contends that Chan must submit an affidavit from the Canadian government official who produced the travel report history and from the Hong Kong official who produced the Octopus Card ledger attesting to the authenticity of those documents. This asks too much of Chan.

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." *United States v. Walker*, 32 F.4th 377, 393 (4th Cir. 2022) (quoting Fed. R. Evid. 901(a)). "[T]he burden to authenticate under Rule 901 is not high," *United States v. Hassan*, 742 F.3d 104, 133 (4th Cir. 2014) (quoting *United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009)), and can be satisfied by offering testimony of a witness with knowledge of the evidence, Fed. R. Evid. 901(b)(1); *see Johnson v. Green*, No. 1:23cv185 (RDA/IDD), 2024 WL 3905718, at *3 (E.D. Va. Aug. 22, 2024) ("Documents can be authenticated by an affidavit of an individual with personal knowledge able to provide evidence sufficient to support a finding that the matter in question is what its proponent claims." (internal citations and quotation marks omitted)).

In *United States v. Rumley*, 952 F.3d 538 (4th Cir. 2020), a probation officer requested records of the defendant's prior convictions from a state court. *See id.* at 547. The government then introduced these records at sentencing through the probation officer's testimony to prove that the defendant had a prior conviction for unlawful wounding. *See id.* The defendant argued that the government failed to sufficiently authenticate the court records, as it had relied on the probation officer's testimony—not that of the state court official who shared the documents—to authenticate the records. *See id.* The Fourth Circuit rejected this argument and concluded that the probation

9

officer's testimony was "sufficient to justify the district court's factual finding that the documents were the official records of the circuit court." *Id.* at 547–48.

Chan followed the exact same process here. Before the December 12 hearing, Chan submitted an affidavit attesting that he requested both his travel records from the Canadian government and a copy of the record of his Octopus Card charges. (*See* ECF No. 32-1 ¶¶ 3–4.) Chan then testified to the same at the hearing. As the Court noted at the hearing, this testimony alone sufficiently authenticates these documents. *See Rumley*, 952 F.3d at 47–48. The information contained in the travel history report and Octopus Card ledger only bolsters that conclusion. The travel history report includes the words "Canada Border Services Agency" and the agency's logo, while the Octopus Card ledger similarly includes the word "Octopus" and the Octopus Card logo. (*See* ECF No. 32-1, at 2–17.) These details, when coupled with Chan's attestations, do more than enough to validate the documents' authenticity.

### 2. *Hearsay*

AmeriSci next argues that the travel history report and Octopus Card ledger constitute inadmissible hearsay. Although hearsay is generally inadmissible, *see* Fed. R. Evid. 802, courts may admit such evidence if the current stage of the proceedings allow, *see, e.g.*, *United States v. Sullivan*, 238 F. App'x 955, 956 (4th Cir. 2007) (per curiam) ("The court did not err considering hearsay testimony at sentencing."). Notably, courts routinely rely on hearsay evidence in adjudicating motions to set aside default judgment. *See May v. Gale Tschuor Co.*, No. 2:09-CV-172, 2008 WL 5069132, at *6 (N.D. Ind. Nov. 24, 2008) (When considering a motion to set aside default judgment, "the court is not concerned with whether [the defendant's] evidence would ultimately be admissible at trial . . . . The issue at this point in the litigation is only whether the defendant's claimed evidence raises a triable fact issue."); *Ewing v. Isaac*, No. 22-CV-1009 JLS

(MDD), 2022 WL 17254757, at *6 n.1 (S.D. Cal. Nov. 28, 2022) (considering a defendant's affidavit that purportedly contained hearsay "to be sufficient evidence, at this early pre-answer stage of the proceedings, to support the Motion to Set Aside"); *see also Cart v. Inv. Retrievers, Inc.*, No. 1:14-CV-1270, 2015 U.S. Dist. LEXIS 103787, at *7 n.1 (N.D. Ohio Apr. 17, 2015) ("[I]t is not clear that an affidavit in support of a motion to set aside an entry of default judgment must satisfy the evidentiary standards of an affidavit submitted in support of a motion for summary judgment."). Thus, regardless of whether the travel history report and Octopus Card ledger qualify as hearsay, the Court may consider those documents in deciding Chan's motion to set aside default judgment.

### 3. *Relevance*

AmeriSci lastly deems the travel history report and Octopus Card ledger irrelevant on the ground that those documents do not prove that AmeriSci failed to properly serve Chan. "Evidence is relevant only if it has the 'tendency to make a fact more or less probable than it would be without the evidence,' and then only if that 'fact is of consequence in determining the action.'" *United States v. Freitekh*, 114 F.4th 292, 316 (4th Cir. 2024) (quoting Fed. R. Evid. 401). The travel history report and Octopus Card ledger easily satisfy this standard. The travel history report covers October 4, 2022—the precise date in question. It, therefore, tends to show that Chan was not in Canada on that date, a fact unquestionably of consequence in determining whether he received service of process. Similarly, while AmeriSci speculates that Chan may have shared the Octopus Card with someone else, no evidence supports this theory. In fact, Chan attested to the opposite both in an affidavit and at the hearing. (*See* ECF No. 32-1, at 1 ("[T]hese charges were made by me in Hong Kong.").) Because the ledger shows two transactions as having occurred in Hong

Kong on October 4, 2022, it clearly has relevance in determining whether Chan received service of process in Canada that day.

*    *    *

In sum, Chan properly authenticated the travel history report and Octopus Card ledger; the Court may consider this evidence at the current stage of the proceedings; and this evidence has relevance in evaluating whether Chan received service of process. Accordingly, the Court will grant Chan's motion for leave to supplement the record.

### B. *Motion to Set Aside Entry of Default and Default Judgment*

#### *1. Entry of Default Judgment*

Courts "may set aside a final default judgment under [Federal] Rule [of Civil Procedure] 60(b)." Fed. R. Civ. P. 55(c). Under Rule 60(b), a court may relieve a party from its final judgment in instances of mistake, inadvertence, surprise, or excusable neglect, *see* Fed. R. Civ. P. 60(b)(1); where the opposing party has engaged in fraud, misrepresentation, or misconduct, *see* Fed. R. Civ. P. 60(b)(3); where the judgment is void, *see* Fed. R. Civ. P. 60(b)(4); and where any other reason justifies relief, *see* Fed. R. Civ. P. 60(b)(6). "[I]n order to obtain relief from a judgment under Rule 60(b), a moving party must show [1] that his motion is timely, [2] that he has a meritorious defense to the action, and [3] that the opposing party would not be unfairly prejudiced by having the judgment set aside." *Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896 (4th Cir. 1987).[6] "If the moving party makes such a showing, he must then satisfy one or more of the six grounds for

---

[6] Courts sometimes—but not always—impose an additional showing of "exceptional circumstances." *Compare Werner v. Carbo*, 731 F.2d 204, 206–07 (4th Cir. 1984) (imposing "exceptional circumstances" requirement), *with Park Corp.*, 812 F.2d at 896 (imposing no such requirement). Of note here, courts have held that one's failure to receive personal service of a summons and complaint qualifies as an exceptional circumstance warranting setting aside entry of default judgment. *See, e.g.*, *Hudson v. Scarborough*, No. 4:21-cv-03703-JD, 2023 WL 4034452, at *3 (D.S.C. June 15, 2023).

12

relief set forth in Rule 60(b) in order to obtain relief from the judgment." *Id.* Because Chan has satisfied each of these requirements, the Court will set aside its entry of default judgment.

### a. Timeliness

"All motions under Rule 60(b) must be made within a reasonable time." *Id.* The Fourth Circuit has found the timeliness requirement satisfied where a party filed its motion to set aside default judgment fifteen days after learning of the judgment. *See id.* A nearly identical timeline exists here, as Chan filed his motion to set aside default judgment twenty days after learning of the Court's entry of default judgment. Thus, Chan timely filed his motion.

### b. Meritorious Defense

To prevail on a motion to set aside default judgment, "a party is not required to establish a meritorious defense by a preponderance of the evidence." *Cent. Op. Co. v. Util. Workers of Am., AFL-CIO*, 491 F.2d 245, 252 n.8 (4th Cir. 1974). Instead, the party must merely make "a proffer of evidence which would permit a finding for the defaulting party." *August Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988). If just "some possibility [exists] that the outcome . . . after a full trial will be contrary to the result achieved by the default," the Court should find that the defaulting party raised a meritorious defense. *Id.* (citation omitted).

Chan denies having the ability to commit the alleged misappropriation of trade secrets. In support, Chan shares a copy of AmeriSci's work schedule for November 2019, which shows that at least one other person worked with him in the laboratory at all times during his shift on November 14, 2019. Additionally, Eller states that Chan could not have downloaded a private VPN unless AmeriSci granted him the necessary privileges or he circumvented the controls, neither of which appears to have occurred here. These facts, if accepted, would enable a factfinder to rule for Chan. Thus, Chan clears the low bar for demonstrating that he has a meritorious defense.

13

### c. Unfair Prejudice

In considering whether a party will suffer prejudice from setting aside a default judgment, courts may evaluate "whether the delay impaired the nonmovant's ability to present some of its evidence, proceed to trial, or complete discovery." *Wang v. Doe*, No. 1:22-cv-651 CMH/IDD, 2024 WL 3100312, at *2 (E.D. Va. May 30, 2024); *see Colleton Prep. Acad. Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 418–19 (4th Cir. 2010). "The mere existence of delay, additional legal costs, and requiring the nonmovant to prove his case on the merits are insufficient, alone, to create unfair prejudice." *Wang*, 2024 WL 3100312, at *2; *see Colleton*, 616 F.3d at 418–19.

AmeriSci claims prejudice on the ground that Chan possibly destroyed evidence of his misappropriation at some point over the past three years. While Chan certainly *could* have destroyed evidence, AmeriSci merely speculates to this point and fails to identify what evidence Chan even has in his possession. Moreover, AmeriSci likely retains control over most, if not all, of the evidence it needs to prove its claims given that it retains possession of the computer that Chan allegedly used to misappropriate the company's trade secrets. AmeriSci, therefore, will not face unfair prejudice from having to litigate its case on the merits.

### d. Rule 60(b) Grounds for Relief

Chan asserts various grounds for relief under Rule 60(b), including that the judgment is void for want of personal jurisdiction under Rule 60(b)(4). To prevail on this ground, Chan must demonstrate that AmeriSci did not, in fact, serve him in this case. *See Koehler v. Dodwell*, 152 F.3d 304, 306–07 (4th Cir. 1998) ("[A] failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant," and "any judgment entered against a defendant over whom the court does not have personal jurisdiction is void."). To be sure, AmeriSci's process server filed an affidavit indicating that he personally served Chan on October

4, 2022, and a 2024 Maryland state court filing lists Chan's home address as in Canada. Chan has nevertheless presented an array of evidence showing that he was not in Canada on October 4, 2022. This includes a receipt for a plane ticket from Toronto to Hong Kong in Chan's name on August 15, 2022; a travel history report from the CBSA showing that he did not enter Canada between August 15, 2022, and March 28, 2024; the Octopus Card ledger with transactions occurring in Hong Kong on October 4, 2022; texts between Chan and his mother corroborating that he went grocery shopping for her that day; a certificate of enrollment at the University of Hong Kong showing that Chan was admitted to medical school on September 1, 2022; a copy of Chan's class schedule for the week of October 3–7, 2022; and live testimony from both Chan and his father stating that he was not in Canada on October 4, 2022. The totality of the evidence tends to show that Chan was not in Canada on October 4, 2022, and, therefore, was not properly served in this case. Accordingly, the Court's entry of default judgment is void.

### 2. *Entry of Default*

Courts "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). In evaluating whether good cause exists, "a district court should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." *Colleton*, 616 F.3d at 417 (quoting *Payne ex rel. Est. of Calzada v. Brake*, 439 F.3d 198, 204–05 (4th Cir. 2006)). The Fourth Circuit has expressed a "strong preference" against entries of default and for district courts to dispose of claims on their merits. *Id.* Thus, "Rule 55(c) motions must be 'liberally construed in order to provide relief from the onerous consequences of defaults and default judgments.'" *Id.* at 421 (quoting *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 954 (4th Cir. 1987)).

Nearly all the factors enumerated above weigh in Chan's favor. As noted, Chan acted with reasonable promptness; he has sufficiently raised a meritorious defense; and AmeriSci will suffer no unfair prejudice from having to litigate its case on the merits. *See supra* Sections II.B.1.a.–c. The totality of the evidence also leans towards a finding that he was not in Canada on October 4, 2022, thus mitigating his personal responsibility for default. *See supra* Section II.B.1.d. And while AmeriSci claims that Chan has actively avoided process for years, the evidence presented falls short of establishing that he has "a history of dilatory action." *Colleton*, 616 F.3d at 417. Finally, requiring Chan to defend this case on the merits unquestionably constitutes a sanction less drastic than imposing hundreds of thousands of dollars of damages on him without giving him the opportunity to defend himself. The Court, therefore, will set aside the Clerk's entry of default.

### III. <u>CONCLUSION</u>

For the foregoing reasons, the Court grants Chan's motions to set aside default judgment and for leave to supplement that filing. (ECF Nos. 27, 31.)

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 12 March 2025
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge

16