## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### (Richmond Division)

| | | |
|---|---|---|
| AMERICA SCIENCE TEAM RICHMOND, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:22-cv-00451-JAG |
| v. | ) | |
| | ) | |
| ENOCH CHAN, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, America Science Team Richmond, Inc. ("**AmeriSci**" or "**Plaintiff**"), by counsel, pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rules 7(F) and 56(B) submits this Memorandum of Law in Opposition to Defendant Enoch Chan's ("**Chan**" or "**Defendant**") Motion for Summary Judgment (ECF No. 84) ("**Motion**") and Memorandum in Support (ECF No. 85) ("**Memorandum**").

## I.      Introduction

Defendant's Motion relies on a selective, self-serving reading of the record and asks the Court to credit his disputed narrative. When the evidence is viewed in the light most favorable to AmeriSci, as Rule 56 requires, the record contains ample proof creating genuine disputes of material fact on each claim. Those disputes are for a jury to resolve, not for disposition on summary judgment.

## II.      Relevant Background

AmeriSci filed its Complaint on June 22, 2022, against former employee Chan arising from Chan's surreptitious and unauthorized access, copying, and transfer on November 14, 2019, of approximately 70,000 computer data files or 20 gigabytes of data (when he needed only one (1)

such file to perform his duties). (Compl. ¶¶ 38-43, ECF No. 1.) Not discovered until January 1, 2020, Chan accomplished the unauthorized transfer without detection through his unauthorized installation of an unauthorized Virtual Private Network ("**VPN**") on his Virtual Machine ("**VM**"). (*Id.* ¶¶ 38, 40-41.) Five days after Chan's unauthorized access, copying, and transfer, Chan went on family medical leave never to return to AmeriSci. (*Id.* ¶¶ 39, 45.)

On April 1, 2025, Defendant filed his Answer, asserted counterclaims, and moved to dismiss. The Court granted Defendant's Motion to Dismiss as to Counts 4, 8, and 9 and dismissed his counterclaims. After Defendant's first Motion for Leave to Amend his Answer was granted in part and denied in part, Defendant filed his Amended Answer on November 17, 2025. The parties completed discovery on November 21, 2025, <u>except</u> for Defendant's deposition, which was scheduled for December 5, 2025, by agreement of the parties. Shortly after the discovery cut-off date, Defendant filed several motions, including this Motion.

### III.    Genuine Issues of Material Fact

Defendant asserts there are no genuine disputes of material fact. That assertion is incorrect. AmeriSci maintains that material factual disputes remain for trial, including the issues identified below. As required by Local Rule 58(B), below are AmeriSci's responses to Defendant's assertions of undisputed facts.

1.    Mr. Enoch Chan was employed by AmeriSci and its affiliate in New York from approximately 2016 through 2020; from September 2019 to November 2019, Mr. Chan worked in AmeriSci's Richmond office. Compl. ¶¶ 29-32.

**RESPONSE:** AmeriSci does not dispute that Defendant worked with America Science Team New York, Inc. from November 15, 2016 through June 3, 2019, after which time he worked at AmeriSci's Richmond office from June 4, 2019 until he left Richmond on November 23, 2019.

2.      Mr. Chan and AmeriSci entered into an Agreement dated June 4, 2019. Compl. ¶ 32; Exhibit 1. The applicable "Employee Policy Manual" dated January 1, 2016, was received by Mr. Chan and he signed an "Employee Acknowledgement Form" on the same day he signed the Agreement. Exhibits 2, 3.

**RESPONSE:** AmeriSci does not dispute, but states that during the entire time of his employment, Defendant was provided several Employee Policy Manuals, policy statements, and signed other Employee Acknowledgement Forms (collectively attached as **Exhibit A**).

3.      Jean Mayes was Chan's direct supervisor or trainer, and Brian Keith was the Laboratory Director and Ms. Mayes' supervisor. Pl.'s Interrog. Resp. No. 1, 16; *see* Mayes Depo. Tr. (Nov 14, 2025); *see* Keith Depo. Tr. (Nov 14, 2025).

**RESPONSE:** AmeriSci does not dispute.

4.      Siuming (Tomi) Hong was the CEO of AmeriSci at the time Chan worked in the Richmond office. Hong Depo. Tr. at 72-74 (Nov 19, 2025).

**RESPONSE:** AmeriSci does not dispute.

5.      Mr. Hong acted as the Fed. R. Civ. P. 30(b)(6) Designee of Plaintiff. Hong Depo. Tr. at 2 (Nov 19, 2025).

**RESPONSE:** AmeriSci does not dispute.

6.     Alexander Cordesman was an employee of AmeriSci as director of microbiology and also supported its information technology needs. Hong Depo. Tr. at 77, 85-86; Cordesman Depo. Tr. at 8 (Nov 24, 2025).

**RESPONSE:** AmeriSci disputes the characterization of Mr. Cordesman's role as being merely supportive. Rather, Mr. Cordesman "took over IT" in about 2008. Cordesman Dep. 7:20–8:4. **Exhibit B**.

7.     Plaintiff's Complaint alleges Chan "misappropriated" approximately 70,000 files or ~20 gigabytes of data by transferring such data from AmeriSci's "Common Share Folder" to the workstation or virtual machine provided to him by AmeriSci for his training. Compl. ¶ 38.

**RESPONSE:** AmeriSci disputes Defendant's misleading statement. Defendant's assertion that the transfer of approximately 70,000 or 20 gigabytes of data was to "the workstation or virtual machine provided to him by AmeriSci for his training" is inaccurate. The undisputed evidence is that Defendant downloaded the 70,000 files to the Virtual Machine that he used during his work in the Richmond offices of AmeriSci. Chan Dep. 67:5–18; 72:9–18; 73:19–74:22; 82:22–83:12; 94:7–15; 98:1–17; Chan Dep. Exs. 15 and 16; Def.'s Answer to Req. for Admis. No. 4 (collectively attached as **Exhibit C**).

8.     The Agreement, Manual, and Acknowledgement do not contain any list or notice describing or limiting Mr. Chan's access or authorization to any document or file on the Common Share Folder. Exhibits 1, 2, 3; *see also* Hong Depo. Tr. at 9:14-28:18; Cordesman Depo. Tr. at 23:11-28:19.

**RESPONSE:** AmeriSci disputes. The Agreement provides employees with notice that they are "not to disclose, communicate, or divulge to any third party or use, or permit others to

use, any confidential information of [AmeriSci]." **Exhibit A**. Accordingly, the Agreement limits an employee's access to the confidential information contained in the Common Share Folder. Additionally, the Manual provides notice limiting employees' access and authorization in Section 5.04: "[e]mployees should not use a password, access a file, or retrieve **any** stored communication without authorization." **Exhibit A** (emphasis added).

9.      The Acknowledgement specifically indicates that the Manual is not a contract or legal document. Exhibit 2.

**RESPONSE:** AmeriSci disputes. The Acknowledgement states that the Manual is not "a contract of *employment*." **Exhibit A** (emphasis added). Virginia law recognizes that employee handbooks can create enforceable contractual obligations under certain circumstances, but courts strongly respect clear disclaimer language that preserves at-will employment status.

10.     The Manual and Acknowledgement, read together with Paragraph 8 of the Agreement, conclusively indicate the only Contract between the Parties is the June 4, 2019, Agreement. Compl. ¶ 46, *et seq.*, Count 1 – Breach of Contract; Exhibits 1, 2, 3.

**RESPONSE:** AmeriSci objects to this "fact" on the grounds that it is a legal conclusion. Regardless and without waiving that objection, AmeriSci disputes. The disclaimer contained in the Acknowledgement is only intended to address and maintain an employee's at-will status. *See* **Exhibit A**. Neither the Acknowledgement nor Paragraph 8 of the Agreement preclude other aspects of the Manual from establishing a contract. *See* **Exhibit A**.

11.     The Contract does not contain any list indicating what Chan was authorized or not authorized to access on Plaintiff's Common Share Folder. Exhibit 1.

**RESPONSE:** AmeriSci disputes. Per Section 5.04 of the Policy Manual, no employee may access any item on the Common Share Folder unless provided specific authorization. **Exhibit A**. AmeriSci's CEO, Mr. Hong, confirmed this fact during his deposition. Hong Dep. 9:20–13:7. **Exhibit D**.

12.     Chan's supervisor, Ms. Mayes, as well as her supervisor, Mr. Keith, both testified they did not explain to Chan any limitation or description of Chan's authorization to access the contents of the Common Share Folder. Keith Depo. Tr. at 24-25; Mayes Depo Tr. at 21-23.

**RESPONSE:** AmeriSci disputes. The testimony from Mr. Keith was that he was not aware of a list presented to Defendant to indicate documents or folders Defendant was not permitted to access, that he did not have a conversation with Defendant regarding specific files or folders Defendant was not authorized to access, and that he was not aware of anyone else having any conversations with Defendant about limiting his access. Keith Dep. 25:12–26:7. **Exhibit E**. The testimony from Ms. Mayes was that they do not remember any document provided to Defendant limiting his access, any email limiting Defendant's access, or any handbook stating what Defendant was not permitted to access. Mayes Dep. 18:15–19:8. **Exhibit F**. In addition, per Section 5.04 of the Policy Manual, no employee may access any item on the Common Share Folder unless provided specific authorization. **Exhibit A**.

13.    Similarly, they were not aware of any instruction prior to November 2019 to limit or define Chan's access to any file or folder in the Common Share Folder. *Id*.

**RESPONSE:** AmeriSci disputes. The testimony from Mr. Keith was that he was not aware of a list presented to Defendant to indicate documents or folders Defendant was not permitted to access, that he did not have a conversation with Defendant regarding specific files or folders Defendant was not authorized to access, and that he was not aware of anyone else having any conversations with Defendant about limiting his access. Keith Dep. 25:12–26:7. **Exhibit E**. The testimony from Ms. Mayes was that they do not remember any document provide to Defendant limiting his access, any email limiting Defendant's access, or any handbook stating what Defendant was not permitted to access. Mayes Dep. 18:15–19:8. **Exhibit F**. In addition, per Section 5.04 of the Policy Manual, no employee may access any item on the Common Share Folder unless provided specific authorization **Exhibit A**.

14.    When asked, AmeriSci's designee indicated the Agreement, Acknowledgement, and Manual (Exhibits 1, 2, 3) comprise such instruction; however, AmeriSci was not able to provide any direction to any specific location in such documents containing such a limitation in any contract. Hong Depo. Tr. at 9:14-28:18; 91:12-93:1.

**RESPONSE:** AmeriSci disputes. Per Section 5.04 of the Policy Manual, no employee may access any item on the Common Share Folder unless provided specific authorization. **Exhibit A**. AmeriSci's CEO, Mr. Hong, confirmed this fact during his deposition. Hong Dep. 9:20–13:7. **Exhibit D**.

15.    AmeriSci's Manual states, "Employee-purchased software must be approved by the Network Manager before being installed." **Exhibit 3 at 37**.

**RESPONSE:** The Manual speaks for itself. **Exhibit A**.

16.    AmeriSci has no evidence demonstrating Chan purchased any software. Hong Depo. Tr. at 20:7-21:17; Cordesman Depo. Tr. at 59:6-14.

**RESPONSE:** AmeriSci disputes. AmeriSci is unaware whether the Virtual Private Network ("**VPN**") was pay or free software. Hong Dep. 20:13–21:10; Cordesman Dep. 59:6–14. **Exhibits D, B**, respectively. In addition, Mr. Cordesman testified that Defendant installed VPN software, the installation package for which was deleted, all of which occurred when Defendant had exclusive, password-necessary access to the Virtual Machine on which he was working on November 14, 2019. Cordesman Dep. 48:2–22; 49:8–50:7. **Exhibit B**.

17.    AmeriSci has no evidence that Chan actually caused the installation of any software, let alone the alleged VPN. Hong Depo. Tr. at 20:7-21:17; Cordesman Depo. Tr. at 57:9-58:12.

**RESPONSE:** AmeriSci disputes. The Cordesman Report indicates that a VPN was installed on Defendant's Virtual Machine at approximately 7:13 p.m. on November 14, 2019. **Exhibit G**. Furthermore, Defendant was in exclusive control of his Virtual Machine during the time of the installation. Cordesman Dep. 48:2–22; 49:8–50:7. **Exhibit B**; *see* **Exhibit H**. This evidence supports the inference that Defendant installed the VPN.

18.     AmeriSci has no evidence Chan executed, ran, or used the VPN software. Cordesman Depo. Tr. at 58:13-63:11.

**RESPONSE:** AmeriSci disputes. AmeriSci has evidence that Defendant transferred and copied the entirety of the Common Share Folder. **Exhibits C, G, I**. As stated above, there is also evidence to support a finding that Defendant installed a VPN to his Virtual Machine. **Exhibit G**. Therefore, a reasonable inference that Defendant ran the VPN, which is typically used to transfer material without detection, exists.

19.     AmeriSci has no evidence Chan moved a single file through the VPN software. Cordesman Depo. Tr. at 60:4-12.

**RESPONSE:** AmeriSci disputes. Again, AmeriSci's evidence supports the inference that Defendant moved the files he copied from the Common Share Folder through a VPN on his Virtual Machine. **Exhibits G, H, I**.

20.     No one from AmeriSci contacted McAfee related to the suspicion that Chan may have created an account with them and used the McAfee Safe Connect VPN software to transfer files. Cordesman Dep. Tr. at 61:1-6.

**RESPONSE:** AmeriSci does not dispute.

21.     Cordesman admitted his conclusions were based upon suspicion and speculation. Cordesman Depo. Tr. at 65:3-68:13.

**RESPONSE:** AmeriSci disputes. Mr. Cordesman's conclusions were based on the totality of the available evidence, including the timing of events, the way the information was accessed, copied, and used, and the surrounding circumstances (including Defendant's departure) that, taken together, support a finding of misappropriation. Cordesman Dep. 65:3–66:1. **Exhibit B**.

22.     In Mr. Haggerty's expert opinion, computers, by default, would have some trace of information to show whether Mr. Chan used any VPN software and connected to any remote computer such as Dropbox to upload any files. *Cf*. Cordesman Depo. Tr. at 65-68, with Haggerty Aff. November 26, 2025.

**RESPONSE:** AmeriSci disputes and objects to this "fact" on the grounds that it is an opinion and not fact, that the opinion was provided after the deadline for Plaintiff's expert disclosures, and that the opinion is without foundation. The opinion is subject to a pending motion for leave filed by Defendant pursuant to Federal Rule of Civil Procedure 15(d) to supplement his expert disclosure (ECF Nos. 82 and 83), which motion Plaintiff opposes for the reasons stated therein (ECF No. 90). In addition, Mr. Cordesman testified that installation of Dropbox would not be necessary, that Chan deleted his browsing history, that logging of a connection between AmeriSci's system and Dropbox was not done by AmeriSci (and a Windows server would not be involved in any event), and that a Virtual Machine did not, by default, log IP addresses/connections. Cordesman Dep. 65:8–68:9. **Exhibit B**.

23.    Cordesman testified that there was a regulatory requirement that Chan gave access to AmeriSci's files. Cordesman Depo. Tr. at 94.

**RESPONSE:** AmeriSci disputes. Mr. Cordesman testified that the regulatory requirements of the laboratory limited his ability to protect the documents in the Common Share Folder. Cordesman Dep. 94:12–14. **Exhibit B**.

24.    Cordesman, AmeriSci's employee, prepared an invoice in the amount of $255,500.00 for 255 minutes of work, plus $500 to store copies of the AmeriSci server and the Virtual Machine assigned to Chan. Cordesman Depo. Tr. at 72-73; *see also* Exhibits 4, 5. The drives containing those backups were returned by Cordesman to AmeriSci. Cordesman Depo. Tr. at 72:3-16.

**RESPONSE:** AmeriSci does not dispute.

25.    AmeriSci permitted the Court to rely upon the false information that the $255,000.00 invoice for time expended was for $1,000 per hour. Exhibit 8 at 3. Such invoiced work was for 255 minutes of work at $1,000 per minute and was contingent. Cordesman Depo. Tr. at 72-73.

**RESPONSE:** AmeriSci disputes. The invoice speaks for itself and was presented to the Court. **Exhibit J**.

26.    In Mr. Haggerty's expert opinion, one thousand dollars per minute of work is unreasonable. Haggerty Aff. November 26, 2025.

**RESPONSE:** AmeriSci objects to this "fact" on the grounds that it is an opinion and not fact, that the opinion was provided after the deadline for Plaintiff's expert disclosures, and that the opinion is without foundation. The opinion is subject to a pending motion for leave filed by Defendant pursuant to Federal Rule of Civil Procedure 15(d) to supplement his expert disclosure (ECF Nos. 82 and 83), which motion Plaintiff opposes for the reasons stated therein (ECF No. 90).

27.    AmeriSci has not paid the invoiced amount; instead, Cordesman agreed to do the work and accept payment if AmeriSci collected against Chan. Cordesman Depo. Tr. at 71-72.

**RESPONSE:** AmeriSci disputes. AmeriSci incurred the invoiced amount and reflected same in its accounts payables. Hong Dep. 149:5–22, **Exhibit B**; **Exhibit J**. While Mr. Cordesman agreed to defer payment until collection from Mr. Chan, his payment was not contingent on collection should that day never come. Cordesman Dep. at 71:9–72:2.

28.    AmeriSci provided the false information to the Court that Chan "essentially abandoned his job." Exhibit 8 at 6-7. AmeriSci was aware that Enoch Chan's father, David Chan, had cancer and that Enoch requested leave to be with his father in November 2019 because of his surgery; thereafter, Chan was unable to return to Richmond because of COVID, but Chan kept in contact with Mr. Keith well into 2020. Keith Depo. Tr. at 40-41; Hong Depo. Tr. at 105-106.

**RESPONSE:** AmeriSci disputes. Chan left AmeriSci's employment approximately five (5) days after the unauthorized copying and transfer of AmeriSci's confidential, proprietary, and trade secret information. **Exhibit K**. While AmeriSci was aware of Chan's assertion that he needed

to take a medical leave, it became clear after the unauthorized download was discovered that Chan had abandoned his job. Mayes Dep. at 40:13-16.

29.    The Court previously dismissed Counts 4, 8, and 9. (ECF No. 55).

**RESPONSE:** AmeriSci does not dispute.

30.    AmeriSci has not suffered any damage caused by Enoch Chan. Hong Depo. Tr. at 35:18-38:1; 38:6-39:7; 43:1-4, 63:15-67:19; 67:8-22; 132:6-139:4.

**RESPONSE:** AmeriSci disputes. The totality of the evidence shows that Chan, without authority, copied the entire Common Share folder, which contains confidential, proprietary, and trade secret information of AmeriSci. Cordesman Dep. 65:3–66:1; Hong Dep. 29:11; 30:22–34:3. **Exhibits D, B**, respectively. In doing so, Chan misappropriated AmeriSci's information and AmeriSci lost control of its information, which derives independent economic value through its secrecy. Hong Dep. 35:8–12; 37:9–20, 67:4–22; 68:11–69:2; 70:10–22. **Exhibit D**. That is a specific harm to AmeriSci. In addition, AmeriSci incurred costs and expenses associated with the investigation into Chan's inappropriate behavior, which is likewise harm and damage to AmeriSci. *See* **Exhibit J**.

31.    When specifically asked, "I wanted you to describe all ways in which AmeriSci has been harmed by Enoch Chan[.] Have you completely answered that question?" AmeriSci's designee stated, "I have a statement for that part. My answer's not a yes or no. Is we do not know how much info leak out, our defense protocols. Again a concern. That is my answer, official answer." Hong Depo. Tr. at 138:19-139:4.

**RESPONSE:** AmeriSci disputes. The testimony speaks for itself.

32.     AmeriSci's Fed. R. Civ. P. 26(a)(2) Disclosure does not contain any expert report opining that any remediation efforts were reasonably necessary, that any damage was more likely than not caused by Mr. Chan's acts, and that the forensic examination fees at a rate of $1,000 per minute were reasonable or in any way related to Mr. Chan's conduct. Exhibits 6, 7.

**RESPONSE:** AmeriSci disputes and objects to this "fact" on the grounds it is not fact but is rather a comment on the contents of Plaintiff's disclosure. In addition, this "fact" also relies on the faulty premise that Plaintiff's expert disclosure was required to include information about which Mr. Cordesman will not testify. The disclosure speaks for itself. **Exhibit L**.


33.     Mr. Haggerty's signed Expert Opinion & Report dated October 28, 2025, explains that AmeriSci's computer system's configuration was not proper, that it failed to have sufficient data segregation, and the copying of the Common Share Folder was not an exfiltration event, but more likely an example of innocent routine user activity. Exhibit 9, 10. Furthermore, Mr. Haggerty explained that Mr. Cordesman's conduct violated accepted standards of forensic analysis and that Mr. Cordesman changed the very data he was instructed by Mr. Hong to preserve. *See* Exhibit 9 at 9; *see also* Exhibit 11 (August 10-18, 2020, email exchange).

**RESPONSE:** AmeriSci disputes and objects to this "fact" on the grounds it is not fact but is an opinion and argument regarding Mr. Haggerty's report. In addition, Mr. Haggerty's opinion is subject to a Motion to Strike and Memorandum in Support (ECF Nos. 80 and 81). Mr. Haggerty's opinion is inadmissible for the reasons stated in Plaintiff's Memorandum (ECF No. 81).

34.    Mr. Cordesman stated he did not trust Enoch Chan and therefore Chan's access was "limited to things he needed to do his job." Exhibit 11.

**RESPONSE:** AmeriSci does not dispute.

35.    Mr. Cordesman also admitted that Chan did not have sole and exclusive access to any of AmeriSci's property. Cordesman Depo. Tr. at 20:22-21:7.

**RESPONSE:** AmeriSci disputes. Mr. Cordesman testified that Defendant had exclusive use of and access to the Virtual Machine provided by AmeriSci at the time of the transfer. Cordesman Dep. 49:18–50:7. **Exhibit B**.

36.    Mr. Cordesman admitted he could not find any of AmeriSci's property outside of AmeriSci's network attributable to any act of Enoch Chan. Cordesman Depo. Tr. at 45-46.

**RESPONSE:** AmeriSci does not dispute.

37.    AmeriSci admitted it provided Chan the username credentials that authorized him to access the Common Share Folder. **Exhibit 16**, RFA #18, 19, 20.

**RESPONSE:** AmeriSci does not dispute.

## IV.    Legal Standard

Summary judgment is only appropriate when the movant establishes that there is no genuine dispute of any material fact and is thereby entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The party seeking summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact."

*Sedar v. Reston Town Ctr. Prop., LLC,* 988 F.3d 756, 761 (4th Cir. 2021) (citing *Celotex Corp.*, 477 U.S. at 323). In turn, "[a] fact is 'material' if proof of its existence or non-existence would affect the disposition of the case under applicable law." *Christ v. Depositors Ins. Co.*, No. 1:24-CV-1548 (PTG/WEF), 2025 WL 2692689, at *2 (E.D. Va. Sept. 18, 2025) (quoting *Wai Man Tom. v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (cleaned up)). A dispute of material fact is "genuine" and "arises when the evidence, viewed in the light most favorable to the nonmoving party, is sufficient to allow a reasonable trier of fact to return a verdict in the party's favor." *Progressive Am. Ins. Co. v. Jireh House, Inc.*, 608 F. Supp. 3d 369, 372 (E.D. Va. 2022) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"[S]ummary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Sedar,* 988 F.3d at 761 (quoting *Jacobs v. N.C. Admin. Off. of the Cts.,* 780 F.3d 562, 568 (4th Cir. 2015)). Thus, the Court may not weigh the evidence or assess credibility and must view the evidence in the light most favorable to the nonmovant. *Id.; see also Progressive Am. Ins. Co.*, 608 F. Supp. 3d at 373–74 ("When applying the summary judgment standard, courts must construe the facts in the light most favorable to the nonmoving party and may not make credibility determinations or weigh the evidence."). Ordinarily, summary judgment is "inappropriate when there is conflicting evidence because it is the function of the factfinder to resolve factual disputes." *Wright v. Audisio*, No. CV 21-809-BAH, 2025 WL 2841629, at *4 (D. Md. Oct. 7, 2025) (citing *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002)).

## V.    Argument

Defendant contends that "[s]uch a speculative and prejudice-laden lawsuit, without any evidence of breach of any contract, exceeding any authorized access, or any misappropriation, should be dismissed on summary judgment…." Mem. at 14. However, Defendant's motion rests on cherry-picked parts of the record and asks the Court to accept Defendant's version of contested facts. As discussed below, the ample circumstantial evidence submitted by AmeriSci creates genuine disputes as to the material facts that Defendant claims are not disputed. These factual disputes cannot be resolved as a matter of law and must be presented to the jury. Therefore, the Court must deny Defendant's motion for summary judgment.

### A.    Standing

According to Defendant, "[i]n the absence of actual damages," AmeriSci has no standing, this lawsuit is not ripe, and AmeriSci is "essentially asking the Court to enter a hypothetical advisory opinion." Mem. 15. Because the predicate is wrong, this argument fails. The record establishes that AmeriSci has identified investigation and remediation costs directly tied to Defendant's misconduct, including forensic analysis of AmeriSci's server and Defendant's Virtual Machine, and time spent copying, storing, and analyzing the data at issue. Exhibits G, J; Cordesman Dep. at 71-73. Accordingly, AmeriSci's harm is neither "contingent" nor "hypothetical" because the invoice reflecting Mr. Cordesman's investigation and forensic analysis has not yet been paid. *See* Mem. 15. "[A] party that has incurred an obligation to pay a debt as a result of the wrongful or unlawful conduct of another, but that has not yet made payment on such debt, has suffered an actual loss." *Condo. Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc.*, 281 Va. 561, 578 (2011); *see also Sykes v. Brown*, 156 Va. 881, 887 (1931) ("Payment of the expense of treatment is not essential to a recovery. If plaintiff is liable for the

debt incurred, that is all that is necessary."). Therefore, AmeriSci's incurred financial obligation is a concrete injury.

      B.     *The record contains evidence supporting each of AmeriSci's claims*

Defendant repeatedly asserts that AmeriSci offers only "speculation" and "bare suspicion" with regard to its claims. *See* Mem. 13, 14, 17, 19. Defendant's argument ignores the contrary evidence in the record, which, when taken as true, compels the reasonable inference that Chan misappropriated AmeriSci's confidential information and trade secrets. Indeed, this case arises from Defendant's admitted unauthorized access and copying, and then the subsequent transfer of approximately 70,000 confidential and proprietary files containing AmeriSci's trade secrets and sensitive business information. In 2020, AmeriSci discovered, and the record now shows that, on November 14, 2019, Chan exceeded his network access and violated AmeriSci's written agreements by copying the entirety of AmeriSci's Common Share folder. Given that Chan was alone at AmeriSci Richmond at this time, and in sole control of his workstation, a jury could reasonably conclude that Chan without authority installed a VPN to steal AmeriSci's confidential, proprietary, and trade secret information. Indeed, the reasonableness of this inference is underscored by the fact that these events occurred after three years of employment with AmeriSci and its affiliates and less than a week before Chan took a leave of absence from which he never returned. Moreover, the record shows that Chan needed few, if any, documents, to complete his job—certainly not all the documents on the Common Share Folder that included HR documents, customer information, and information about different, unrelated testing methods. Overall, the totality of the evidence points to only one reasonable conclusion: Chan, in a three–hour window, while unsupervised, at times, caused the unauthorized access, copying, and transfer of AmeriSci's confidential and proprietary information.

As courts have consistently recognized, "circumstantial evidence is treated no differently than direct evidence." *Wright v. Audisio*, No. CV 21-809, 2025 WL 2841629, at *6 (D. Md. Oct. 7, 2025) (citing *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 764 (4th Cir. 2021)). In fact, "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 325 (2025) (quoting *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003)). Indeed, the Supreme Court of the United States noted that the adequacy of such evidence extends to criminal cases with the much higher standard of proof. *Desert Palace, Inc.*, 539 U.S. at 100 ("[W]e have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required."). And, the Court also observed that "juries are routinely instructed that '[t]he law makes no distinction between the weight or value to be given to either direct or circumstantial evidence.'" *Id.* (quoting 1A K. O'Malley, J. Grenig, & W. Lee, Fed. Jury Prac. & Instr, Criminal § 12.04 (5th ed.2000)). *See also* 3 Fed. Jury Prac. & Instr. § 104:05 (7th ed.) ("'Indirect or circumstantial' evidence is proof of a chain of facts and circumstances indicating the existence or nonexistence of a fact. The law generally makes no distinction between the weight or value to be given to either direct or circumstantial evidence. A greater degree of certainty is not required of circumstantial evidence. You are required to find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.").

Thus, Defendant's attempt to diminish and dismiss AmeriSci's evidence as "speculation" simply because it is circumstantial is untenable. *See Stamper v. Baskerville*, 531 F. Supp. 1122, 1126 (E.D. Va. 1982) ("Circumstantial evidence cannot be expected to weave an airtight case."). AmeriSci has presented evidence that supports a probative, non-speculative inference of liability.

Accordingly, a jury could reasonably conclude that Defendant engaged in the alleged conduct. Therefore, summary judgment would be inappropriate.

       *C.*    *Genuine disputes of material fact preclude summary judgment*

     i.    Count I

Defendant argues that there was no breach because Plaintiff has not identified a third-party recipient of AmeriSci's information and because the Employee Manual is not a contract. *See* Mem. 16. But the Agreement's confidentiality clause prohibits disclosure and use. By accessing and downloading the entirety of the Common Share Folder, Defendant used confidential information. Whether Defendant's copying and transfer of approximately 70,000 files from the Common Share Folder to his Virtual Machine violated that clause presents a disputed question of fact.

Further, the Employee Manual is a contract. "Employee handbooks can, in certain circumstances, confer contractual rights." *Michael v. Sentara Health Sys.*, 939 F. Supp. 1220, 1236 (E.D. Va. 1996). For example, in *Thompson v. American Motor Inns, Inc.*, the court found that the language in the employee handbook at issue created a contract governing the working relationship between the company and its employees. 623 F. Supp. 409, 416 (W.D. Va. 1985). There, the handbook's provisions clearly construed an offer as it explained that the company would provide salary, continued employment, fair treatment, and other benefits to those who follow its policies. *Id.* In addition, the employee "accepts the terms of the offer by reading the handbook, signifying that he understands the terms and conditions of employment, and is aware of what is expected from him so that he may benefit from all that [the company] is offering." *Id.* at 416-17. Finally, the court found that consideration for the company's promise to follow its policies was furnished by the employee's continued work. *Id.*

20

While Defendant contends that the Employee Manual is not a contract because of the disclaimer in the Employee Acknowledgement Form, *see* Mem. 16, the disclaimer is intended to address and maintain employee at-will status. The disclaimer provides that the Employee Manual "is neither a contract of employment nor a legal document." Such a disclaimer does not apply to the provisions of the Employee Manual that govern the relationship between AmeriSci and its employees. Here, as in *Thompson*, it is reasonable to construe an offer from the provisions in the Employee Manual as it outlines the benefits that employees will be provided so long as they abide by the policies contained therein. Defendant accepted this offer by accepting the Employee Manual and signing the Employee Acknowledgement Form. Defendant's continued employment with AmeriSci operated as consideration for the AmeriSci's promise to provide Defendant with the benefits listed in the Employee Manual. Finally, Defendant breached this contract by violating AmeriSci's policy prohibiting employees from "us[ing] a password, access[ing] a file, or retriev[ing] any stored communication without authorization." Ultimately, there is a genuine dispute of fact as to whether the Employee Manual constitutes a contract.

ii.     Counts II, III, and VII

A reasonable jury could find that AmeriSci possessed trade secrets subject to reasonable secrecy measures and that Defendant misappropriated them by acquisition through improper means or use without consent. Defendant's own statement of facts acknowledges that AmeriSci's Complaint alleged that Defendant transferred mass amounts of data from the Common Share Folder to his Virtual Machine. Mem. at 3. Such an act is consistent with unauthorized acquisition or use beyond the scope of authorization. *See Marstellar v. ECS Federal, Inc.*, No. 1:13CV593, 2013 WL 4781786, at *5 (E.D. Va. Sept. 5, 2013) (finding that "allegations of unauthorized transfer of trade secret documents to a storage device" sufficiently states a claim of acquisition by

improper means). Defendant's contention that moving files within AmeriSci's system "cannot be considered misappropriation" simply states his view of the facts. *See* Mem. at 17. Whether the data constitutes trade secrets, whether secrecy efforts were reasonable, and whether Defendant acquired or used the data without consent are fact-intensive questions unsuitable for summary judgment.

Moreover, Defendant's reliance on a Black's Law Dictionary definition is misplaced. *See* Mem. 17. The DTSA defines misappropriation to include the acquisition, disclosure, or use of a trade secret of another without express or implied consent by a person who meets certain knowledge requirements regarding the confidential nature of the information. 18 U.S.C. § 1839. Similarly, the VUTSA defines misappropriation as acquisition, disclosure, or use of a trade secret of another without express or implied consent under comparable circumstances. Va. Code § 59.1-336. Under these statutes, "mere acquisition of a trade secret by improper means … is sufficient to establish misappropriation." *Integrated Glob. Servs., Inc. v. Mayo*, No. 3:17CV563, 2017 WL 4052809, at *8 (E.D. Va. Sept. 13, 2017). Improper means include, among other things, use of a computer or computer network without authority and breach of a duty to maintain secrecy. Va. Code § 59.1-336; 18 U.S.C. § 1839(5). Whether Defendant exceeded his authorization by acquiring and copying AmeriSci's files is disputed and determining the answer should be left up to the jury.

### iii.    Counts V and VI

Defendant claims his access and transfers were authorized because he possessed credentials and no one expressly limited his authorization. Mem. 17. The CFAA recognizes liability where a user "exceeds authorized access." 18 U.S.C. § 1030. As the Fourth Circuit acknowledged in *WEC Carolina Energy Solutions, LLC v. Miller*, "an employee 'exceeds authorized access' when he has approval to access a computer but uses his access to obtain or alter information that falls outside

the bounds of his approved access." 687 F.3d 199, 204 (4th Cir. 2012). Likewise, *Van Buren v. United States* confirms that exceeding authorized access occurs when an individual "accesses a computer with authorization but then obtains information located in particular areas of the computer-such as files, folders, or databases-that are off-limits to him." 593 U.S. 374, 396 (2021). Similarly, the VCAA treats acting "without authority" to include situations where a person knowingly exceeds the permission granted. *See* Va. Code § 18.2-152.2.

While AmeriSci did provide Defendant with credentials to access its computer networks, credentials alone do not resolve whether he exceeded authorized access by obtaining information that fell outside the scope of his approved training needs and specific authorizations. Here, the evidence indicates that Defendant's access was limited to things he needed to do his job or material that he was specifically authorized to access. Hong Dep. 86:11–14; Cordesman Dep. 92:7–8. Therefore, whether Defendant exceeded authorized access under the CFAA or acted without authority under the VCAA is a question for the jury.

iv.    Damages

Defendant relies on selected deposition excerpts and his expert's opinion (which is subject to a pending Motion for Leave to Supplement, which, in turn, is opposed) regarding the reasonableness of AmeriSci's forensic analysis to assert that AmeriSci has not suffered any damage. *See* Mem. 18–19. Defendant's reliance on testimony that AmeriSci did not identify third parties with found data or lost customers does not eliminate the existence of damages. For example, both the CFAA and VCAA permit a Plaintiff to recover the costs they incurred in investigating and identifying the offenses. Additionally, Defendant's argument is expressly contradicted by the Invoice for the investigation and remediation efforts of Mr. Cordesman in response to Defendant's conduct and AmeriSci's expert testimony. *See* Exhibits G, J. As discussed above, AmeriSci has

incurred an obligation to pay Mr. Cordesman for his services and has, therefore, suffered an actual loss. *See Condo. Servs., Inc.,* 281 Va. at 578. Further, disagreements about the necessity, causation, and reasonableness of those costs are questions of fact for trial, not grounds for summary judgment. Ultimately, there is evidence placing the damages issue into genuine dispute.

## VI.    Conclusion

WHEREFORE, for the foregoing reasons, AmeriSci requests this Court deny Defendant's Motion for Summary Judgment and grant such other relief as this Court deems just and appropriate.

Dated: December 12, 2025                    Respectfully Submitted,


By: */s/ Robert Wm. Best*
                    Counsel

Stephen M. Faraci, Sr., Esquire (VSB No. 42748)
Robert N. Drewry, Esquire (VSB No. 91282)
Whiteford, Taylor & Preston, L.L.P.
1021 E. Cary Street, Suite 2001
Richmond, Virginia 23219
Telephone:  (804) 977-3307
Facsimile:  (804) 977-3298
E-Mail:  sfaraci@whitefordlaw.com
E-Mail:  rdrewry@whitefordlaw.com

Robert Wm. Best (VSB No. 72077)
Whiteford, Taylor & Preston, L.L.P.
249 Central Park Avenue, Suite 300-91
Virginia Beach, Virginia  23462
Telephone:  (757) 271-9752
Facsimile:  (757) 271-9737
E-Mail:  rbest@whitefordlaw.com


*Counsel for Plaintiff, America Science Team Richmond, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 12, 2025, I electronically filed *Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment* with the Clerk of the Court using the CM/ECF system, which will then send the document and notification of such file (NEF) to all counsel of record.

*/s/ Robert Wm. Best*       

Counsel
